UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

Plaintiff,

v.                                                   Case No. 25-CR-161-BHL

ROSHAN SHAH,

Defendant.

## PLEA AGREEMENT

1.      The United States of America, by its attorneys, Brad D. Schimel, United States

Attorney for the Eastern District of Wisconsin, and Peter Smyczek and Zachary Corey, Assistant

United States Attorneys, and the defendant, Roshan Shah, individually and by attorney

Alexandra Douglas, pursuant to Rule 11 of the Federal Rules of Criminal Procedure, enter into

the following plea agreement:

## CHARGES

2.      The defendant has been charged in a one-count indictment, which alleges a

violation of Title 18, United States Code, Section 1956(h).

3.      The defendant has read and fully understands the charge contained in the

indictment. He fully understands the nature and elements of the crime with which he has been

charged, and the charge and the terms and conditions of the plea agreement have been fully

explained to him by his attorney.

4.      The defendant voluntarily agrees to plead guilty to the indictment set forth in full

as follows:

**THE GRAND JURY CHARGES THAT:**

1. Beginning by at least June 17, 2025, and continuing until at least August 4, 2025, in the State and Eastern District of Wisconsin and elsewhere,

**ROSHAN SHAH**

conspired with others, known and unknown to the grand jury, to commit offenses against the United States in violation of Title 18, United States Code, Section 1956, namely, to knowingly conduct and attempt to conduct financial transactions affecting interstate commerce, which transactions involved the proceeds of specified unlawful activity, that is, wire fraud in violation of Title 18, United States Code, Section 1343, knowing that the transactions were designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, and that while conducting and attempting to conduct such financial transactions, knew that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

MANNER AND MEANS

2. The manner and means used to accomplish the objectives of the conspiracy included, among others, the following:

    a. Roshan Shah traveled to different states to pick up fraud proceeds from victims. An individual named "Montu" instructed Shah where and when to pick up fraud proceeds and provided Shah with an alias to use during pickups. When Shah picked up or received fraud proceeds, he did so in cash and gold, which are not traceable.

    b. Shah would then hand the cash or gold to another individual he did not know in a manner that was not documented. By doing so, Shah intended to conceal and

2

disguise the nature, location, source, ownership, and control of the fraud proceeds he picked up and delivered to other individuals.

All in violation of Title 18, United States Code, Section 1956(h).

5. The defendant acknowledges, understands, and agrees that he is, in fact, guilty of the offense described in paragraph 4. The parties acknowledge and understand that if this case were to proceed to trial, the government would be able to prove the following facts beyond a reasonable doubt. The defendant admits that these facts are true and correct and establish his guilt beyond a reasonable doubt:

Roshan Shah is a citizen of India who was attending college in Canada on a student visa. He entered the United States lawfully pursuant to a visitor visa on June 17, 2025. He did not know anyone in the United States and the only thing he did while in the United States was to travel around the country picking up cash and gold from fraud victims.

An individual nicknamed "Montu" located in India would send Shah a location for a pickup through WhatsApp. Shah would drive to that location and update Montu about his status approximately every 30 minutes when he was en route. Montu would send information (including age and pictures) of the victims to Shah. Montu would send Shah a pseudonym for Shah to use (e.g., Adam or David Miller) and a password. Shah would then receive a package of gold or cash from the victim who would tell him the password. Frequently, the package was addressed to the U.S. Department of Treasury.

Shah would then drive approximately five minutes away and count the gold or cash on camera and send pictures and video of the gold or cash to Montu.

Montu would then send Shah a public location where he was supposed to drop off the money or gold to another individual. Montu never told Shah the real names of the individuals to whom Shah gave the gold or cash. Montu would provide a password to Shah to say to the person to whom he gave the gold or cash. Shah expected that when he returned to Canada, he would to be paid approximately $2,000 to $4,000 per pick up and he expected that his lodging and domestic flight costs would also be reimbursed by his co-conspirators. While he received some money from his co-conspirators while he was in the United States, through cash payments and deposits into his bank account, he estimated that he was owed approximately $20,000-$30,000 by his co-conspirators on the date of his arrest.

Shah conducted at least fifteen pickups in the United States on the following dates in the following amounts:

3

| Date of pick up | Ounces of Gold | Spot price of gold | Cash | Approximate Value |
|---|---|---|---|---|
| 6/26/2025 | 30 | $3,350.70 | | $100,521.00 |
| 7/1/2025 | 45 | $3,353.50 | | $150,907.50 |
| 7/2/2025 | 68 | $3,364.70 | | $228,799.60 |
| 7/8/2025 | 141 | $3,323.90 | | $468,669.90 |
| 7/10/2025 | 66 | $3,332.60 | | $219,951.60 |
| 7/16/2025 | 60 | $3,368.40 | | $202,104.00 |
| 7/16/2025 | 141 | $3,368.40 | | $474,944.40 |
| 7/17/2025 | | | $300,000 | $300,000 |
| 7/19/2025 | 57.4 | $3,367.60 | | $193,300.24 |
| 7/21/2025 | 71 | $3,408 | | $241,968.00 |
| 7/22/2025 | | | $158,518 | $158,518 |
| 7/24/2025 | 65 | $3,378.40 | | $219,596.00 |
| 7/25/2025 | | | $249,518 | $249,518 |
| 7/31/2025 | 86 | $3,311.80 | | $284,814.80 |
| 8/3/2025 | 62 | $3,363.60 | | $208,543.20 |

On approximately June 11, 2025, Victims A and B (of New Berlin, Wisconsin) received a pop-up on their computer that indicated there was a "major problem" with their computer. It instructed them to contact Microsoft via telephone at a specific number. They did so and spoke with an individual named "Mike Davis" who then transferred the victims to "David E. Freeman," who identified himself as a Special Agent with the United States Department of Treasury. He informed them that they were victims of a massive scheme that involved multiple victims and suspects throughout the United States. He provided a photograph purportedly depicting his badge and credentials. He advised that they should only speak about this case with him and "Scott Bessent."

Freeman advised Victims A and B that in order to "protect" their assets, they should place them in a safety deposit box in their name at the George W. Bush Federal Building in Washington, DC. He advised them to convert their personal assets into gold and told them that a courier would pick up the assets and place them in the safety deposit box.

On July 1, 2025, Victim A purchased 64 one-ounce gold Maple Leaf coins with a total value of $217,408. Victim A received the coins on July 7, 2025, and a courier picked them up from him that day.

On July 9, 2025, Victim A purchased 33 one-ounce gold coins with a total value of $111,342. Victim A received the coins on July 14, 2025, and the same courier picked them up from his residence.

On July 18, 2025, Victim A purchased 57 one-ounce gold coins with a total value of $197,345. Victim A received the coins on July 28, 2025, and a different courier picked them up from his residence.

4

For all of these pickups, Victim A packaged the coins in a box and addressed the box to his (pretend) safety deposit box as he had been instructed to do. Victim A also was provided with a "password" to give to the courier and did so each time.

There is no evidence to indicate that Roshan Shah was personally involved in any of the above-mentioned pickups from Victims A and B. However, as detailed below, Shah was involved in a subsequent pickup.

On July 23, 2025, Victim A purchased 53 one-ounce gold coins for $185,977. Around July 29, 2025, he saw a news segment about gold courier scams and realized he had been the victim of a fraud and reported the fraud to the New Berlin Police Department. Victims A and B then worked with law enforcement to set up a sting on August 4, 2025. Victims A and B (guided by law enforcement) picked up the gold he bought and sent pictures to the scammers indicating it was ready to be picked up. They then packed a similar box that weighed/felt the same as one with 53 one-ounce coins. In the meantime, Roshan Shah, who was in Illinois at the time, had received instructions to perform a pickup in New Berlin, Wisconsin. He drove to New Berlin, picked up the box from Victim A as scheduled, went to a nearby gas station, and opened the box. Law enforcement then arrested Shah.

This information is provided for the purpose of setting forth a factual basis for the plea of guilty. It is not a full recitation of the defendant's knowledge of, or participation in this offense.

## PENALTIES

6.     The parties understand and agree that the offense to which the defendant will enter a plea of guilty carries the following maximum term of imprisonment and fine: 20 years and $500,000 (or twice the value of the property involved). The charge also carries a mandatory special assessment of $100 and a maximum of three years of supervised release. The parties further recognize that a restitution order may be entered by the court. The parties' acknowledgments, understandings, and agreements with regard to restitution are set forth in paragraph 30 of this agreement.

7.     The defendant acknowledges, understands, and agrees that he has discussed the relevant statutes as well as the applicable sentencing guidelines with his attorney.

5

## ELEMENTS

8.      The parties understand and agree that in order to sustain the charge of conspiracy to commit concealment money laundering as set forth in the indictment, the government must prove each of the following propositions beyond a reasonable doubt.  The elements of the specified unlawful activity of wire fraud are also listed below.

### Conspiracy

(1) The conspiracy as charged in the indictmentexisted; and
(2) The defendant knowingly became a member of the conspiracy with an intent to advance the conspiracy.

### Concealment Money Laundering

(1) The defendant knowingly conducted or attempted to conduct a financial transaction; and
(2) Some or all of the property involved in the financial transaction was proceeds of wire fraud; and
(3) The defendant knew that the property involved in the financial transaction represented proceeds of some form of unlawful activity; and
(4) The defendant knew that the transaction was designed in whole or in part to conceal and disguise the nature, location, source, ownership or control of the proceeds of wire fraud.

### Wire Fraud

(1) The defendant knowingly devised or participated in a scheme to defraud; and
(2) the defendant did so with the intent to defraud; and
(3) the scheme to defraud involved a materially false or fraudulent pretense, representation, or promise; and
(4) for the purpose of carrying out the scheme or attempting to do so, the defendant caused interstate wire communications to take place.

## SENTENCING PROVISIONS

9.      The parties agree to waive the time limits in Fed. R. Crim. P. 32 relating to the presentence report, including that the presentence report be disclosed not less than 35 days before the sentencing hearing, in favor of a schedule for disclosure, and the filing of any objections, to be established by the court at the change of plea hearing.

6

10.    The parties acknowledge, understand, and agree that any sentence imposed by the court will be pursuant to the Sentencing Reform Act, and that the court will give due regard to the Sentencing Guidelines when sentencing the defendant.

11.    The defendant acknowledges and agrees that his attorney has discussed the applicable sentencing guidelines provisions with him to the defendant's satisfaction.

12.    The parties acknowledge and understand that prior to sentencing the United States Probation Office will conduct its own investigation of the defendant's criminal history. The parties further acknowledge and understand that, at the time the defendant enters a guilty plea, the parties may not have full and complete information regarding the defendant's criminal history. The parties acknowledge, understand, and agree that the defendant may not move to withdraw the guilty plea solely as a result of the sentencing court's determination of the defendant's criminal history.

<strong><u>Sentencing Guidelines Calculations</u></strong>

13.    The defendant acknowledges and understands that the sentencing guidelines recommendations contained in this agreement do not create any right to be sentenced within any particular sentence range, and that the court may impose a reasonable sentence above or below the guideline range. The parties further understand and agree that if the defendant has provided false, incomplete, or inaccurate information that affects the calculations, the government is not bound to make the recommendations contained in this agreement.

<strong><u>Relevant Conduct</u></strong>

14.    The parties acknowledge, understand, and agree that pursuant to Sentencing Guidelines Manual § 1B1.3, the sentencing judge may consider relevant conduct in calculating the sentencing guidelines range, even if the relevant conduct is not the subject of the offense to which the defendant is pleading guilty.

7

## Base Offense Level

15.     The parties agree that the specified unlawful activity (which was not charged) is wire fraud. The base offense level for wire fraud is 6 under Sentencing Guidelines Manual § 2B1.1(a)(2). Based on the below, the parties acknowledge and understand that the government will recommend that the total offense level of the specified unlawful activity of wire fraud is 30. Accordingly, the government will recommend to the sentencing court that the base offense level of the money laundering conspiracy is 30 under Sentencing Guidelines Manual § 2S1.1(a)(1).

16.     If the sentencing court determines that the defendant does not have any criminal history points, and otherwise meets all of the criteria listed in Sentencing Guidelines Manual § 4C1.1(a), then the government will agree to recommend to the sentencing court that a 2-level decrease is applicable pursuant to § 4C1.1(a) of the Sentencing Guidelines.

## Specific Offense Characteristics

17.     The parties agree to recommend to the sentencing court that an 18-level increase for a loss amount over $3,500,000 is applicable to the specified unlawful activity of wire fraud under Sentencing Guidelines Manual § 2B1.1(b)(1)(J). The parties acknowledge and understand that the government will recommend to the sentencing court that a two-level increase is appropriate because the specified unlawful activity of wire fraud involved 10 or more victims under Sentencing Guidelines Manual § 2B1.1(b)(2)(A)(i). The government will also recommend to the sentencing court that a two-level increase is appropriate because the specified unlawful activity of wire fraud involved a misrepresentation that the defendant was acting on behalf of a government agency under Sentencing Guidelines Manual § 2B1.1(b)(9)(A). The government will also recommend to the sentencing court that a two-level increase is appropriate because a substantial portion of the specified unlawful activity of the wire fraud scheme took place outside of the United States under § 2B1.1(b)(10)(A) & (B).

8

18. The parties agree to recommend to the sentencing court that a two-level increase is appropriate for the offense of conviction because the defendant was convicted under 18 U.S.C. § 1956 under Sentencing Guidelines Manual §2S1.1.

### Acceptance of Responsibility

19. The government agrees to recommend a two-level decrease for acceptance of responsibility as authorized by Sentencing Guidelines Manual § 3E1.1(a), and to make a motion recommending an additional one-level decrease as authorized by Sentencing Guidelines Manual § 3E1.1(b), but only if the defendant exhibits conduct consistent with those provisions.

### Sentencing Recommendations

20. Both parties reserve the right to provide the district court and the probation office with any and all information which might be pertinent to the sentencing process, including but not limited to any and all conduct related to the offense as well as any and all matters which might constitute aggravating or mitigating sentencing factors.

21. Both parties reserve the right to make any recommendation regarding any and all factors pertinent to the determination of the sentencing guideline range; the fine to be imposed; the amount of restitution and the terms and condition of its payment; the length of supervised release and the terms and conditions of the release; the defendant's custodial status pending the sentencing; and any other matters not specifically addressed by this agreement.

22. The government agrees to recommend a sentence of no higher than the low-end of the applicable sentencing guideline range as determined by the court, or 63 months, whichever is lower.

9

## Court's Determinations at Sentencing

23. The parties acknowledge, understand, and agree that neither the sentencing court nor the United States Probation Office is a party to or bound by this agreement. The United States Probation Office will make its own recommendations to the sentencing court. The sentencing court will make its own determinations regarding any and all issues relating to the imposition of sentence and may impose any sentence authorized by law up to the maximum penalties set forth in paragraph 6 above. The parties further understand that the sentencing court will be guided by the sentencing guidelines but will not be bound by the sentencing guidelines and may impose a reasonable sentence above or below the calculated guideline range.

24. The parties acknowledge, understand, and agree that the defendant may not move to withdraw the guilty plea solely as a result of the sentence imposed by the court.

## FINANCIAL MATTERS

25. The defendant acknowledges and understands that any and all financial obligations imposed by the sentencing court are due and payable in full upon entry of the judgment of conviction. The defendant further understands that any payment schedule imposed by the sentencing court shall be the minimum the defendant is expected to pay and that the government's collection of any and all court imposed financial obligations is not limited to the payment schedule. The defendant agrees not to request any delay or stay in payment of any and all financial obligations. If the defendant is incarcerated, the defendant agrees to participate in the Bureau of Prisons' Inmate Financial Responsibility Program, regardless of whether the court specifically directs participation or imposes a schedule of payments.

26. The defendant agrees to provide to the Financial Litigation Program (FLP) of the United States Attorney's Office, upon request of the FLP during any period of probation or

10

supervised release imposed by the court, a complete and sworn financial statement on a form provided by FLP and any documentation required by the form.

## Fine

27.     The parties agree to recommend that no fine be imposed by the sentencing court.

## Special Assessment

28.     The defendant agrees to pay the special assessment in the amount of $100 prior to or at the time of sentencing.

## Restitution

29.     The defendant agrees to pay restitution in the amount of at least $3,702,156.24. The parties acknowledge and understand that the government will recommend to the sentencing court that the defendant pay an additional $526,095 in restitution (for a total of $4,228,251.24). The defendant understands that because restitution for the offense is mandatory, the amount of restitution shall be imposed by the court regardless of the defendant's financial resources. The defendant agrees to cooperate in efforts to collect the restitution obligation.

## DEFENDANT'S WAIVER OF RIGHTS

30.     In entering this agreement, the defendant acknowledges and understands that he surrenders any claims he may have raised in any pretrial motion, as well as certain rights which include the following:

    a.    If the defendant persisted in a plea of not guilty to the charges against him, he would be entitled to a speedy and public trial by a court or jury. The defendant has a right to a jury trial. However, in order that the trial be conducted by the judge sitting without a jury, the defendant, the government and the judge all must agree that the trial be conducted by the judge without a jury.

    b.    If the trial is a jury trial, the jury would be composed of twelve citizens selected at random. The defendant and his attorney would have a say in who the jurors would be by removing prospective jurors for cause where actual bias or other disqualification is shown, or without cause by exercising peremptory challenges. The jury would have to agree unanimously before it

11

could return a verdict of guilty. The court would instruct the jury that the defendant is presumed innocent until such time, if ever, as the government establishes guilt by competent evidence to the satisfaction of the jury beyond a reasonable doubt.

c.  If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all of the evidence, whether or not he was persuaded of defendant's guilt beyond a reasonable doubt.

d.  At such trial, whether by a judge or a jury, the government would be required to present witnesses and other evidence against the defendant. The defendant would be able to confront witnesses upon whose testimony the government is relying to obtain a conviction and he would have the right to cross-examine those witnesses. In turn the defendant could, but is not obligated to, present witnesses and other evidence on his own behalf. The defendant would be entitled to compulsory process to call witnesses.

e.  At such trial, defendant would have a privilege against self-incrimination so that he could decline to testify and no inference of guilt could be drawn from his refusal to testify. If defendant desired to do so, he could testify on his own behalf.

31.  The defendant acknowledges and understands that by pleading guilty he is waiving all the rights set forth above. The defendant further acknowledges the fact that his attorney has explained these rights to him and the consequences of his waiver of these rights. The defendant further acknowledges that as a part of the guilty plea hearing, the court may question the defendant under oath, on the record, and in the presence of counsel about the offense to which the defendant intends to plead guilty. The defendant further understands that the defendant's answers may later be used against the defendant in a prosecution for perjury or false statement.

32.  The defendant acknowledges and understands that he will be adjudicated guilty of the offense to which he will plead guilty and thereby may be deprived of certain rights, including but not limited to the right to vote, to hold public office, to serve on a jury, to possess firearms, and to be employed by a federally insured financial institution.

12

33. The defendant knowingly and voluntarily waives all claims he may have based upon the statute of limitations, the Speedy Trial Act, and the speedy trial provisions of the Sixth Amendment. The defendant agrees that any delay between the filing of this agreement and the entry of the defendant's guilty plea pursuant to this agreement constitutes excludable time under the Speedy Trial Act.

### Further Civil or Administrative Action

34. The defendant acknowledges, understands, and agrees that the defendant has discussed with his attorney and understands that nothing contained in this agreement, including any attachment, is meant to limit the rights and authority of the United States of America or any other state or local government to take further civil, administrative, or regulatory action against the defendant, including but not limited to any listing and debarment proceedings to restrict rights and opportunities of the defendant to contract with or receive assistance, loans, and benefits from United States government agencies.

### MISCELLANEOUS MATTERS

35. The defendant recognizes that pleading guilty may have consequences with respect to the defendant's immigration status if the defendant is not a citizen of the United States. Under federal law, a broad range of crimes are removable offenses, including the offense to which defendant is pleading guilty. Removal and other immigration consequences are the subject of a separate proceeding, and the defendant understands that no one, including the defendant's attorney or the sentencing court, can predict to a certainty the effect of the defendant's conviction on the defendant's immigration status. The defendant nevertheless affirms that the defendant wants to plead guilty regardless of any immigration consequences, including the potential for automatic removal from the United States.

13

## GENERAL MATTERS

36.     The parties acknowledge, understand, and agree that this agreement does not require the government to take, or not to take, any particular position in any post-conviction motion or appeal.

37.     The parties acknowledge, understand, and agree that this plea agreement will be filed and become part of the public record in this case.

38.     The parties acknowledge, understand, and agree that the United States Attorney's office is free to notify any local, state, or federal agency of the defendant's conviction.

39.     The defendant understands that pursuant to the Victim and Witness Protection Act, the Justice for All Act, and regulations promulgated thereto by the Attorney General of the United States, the victim of a crime may make a statement describing the impact of the offense on the victim and further may make a recommendation regarding the sentence to be imposed. The defendant acknowledges and understands that comments and recommendations by a victim may be different from those of the parties to this agreement.

## EFFECT OF DEFENDANT'S BREACH OF PLEA AGREEMENT

40.     The defendant acknowledges and understands if he violates any term of this agreement at any time, engages in any further criminal activity prior to sentencing, or fails to appear for sentencing, this agreement shall become null and void at the discretion of the government. Alternatively, the government may, in its discretion, ask the Court to be released from specific obligations under this plea agreement to reflect the defendant's conduct if the defendant commits a federal, state, or local offense punishable by a term of imprisonment exceeding one year or violates a material term of the plea agreement. The defendant further acknowledges and understands that the government's agreement to dismiss any charge is conditional upon final resolution of this matter. If this plea agreement is revoked or if the

14

defendant's conviction ultimately is overturned, then the government retains the right to reinstate any and all dismissed charges and to file any and all charges which were not filed because of this agreement. The defendant hereby knowingly and voluntarily waives any defense based on the applicable statute of limitations for any charges filed against the defendant as a result of his breach of this agreement. The defendant understands, however, that the government may elect to proceed with the guilty plea and sentencing. If the defendant and his attorney have signed a proffer letter in connection with this case, then the defendant further acknowledges and understands that he continues to be subject to the terms of the proffer letter.

## VOLUNTARINESS OF DEFENDANT'S PLEA

41.     The defendant acknowledges, understands, and agrees that he will plead guilty freely and voluntarily because he is in fact guilty. The defendant further acknowledges and agrees that no threats, promises, representations, or other inducements have been made, nor agreements reached, other than those set forth in this agreement, to induce the defendant to plead guilty.

15

## ACKNOWLEDGMENTS

I am the defendant. I am entering into this plea agreement freely and voluntarily. I am not now on or under the influence of any drug, medication, alcohol, or other intoxicant or depressant, whether or not prescribed by a physician, which would impair my ability to understand the terms and conditions of this agreement. My attorney has reviewed every part of this agreement with me and has advised me of the implications of the sentencing guidelines. I have discussed all aspects of this case with my attorney and I am satisfied that my attorney has provided effective assistance of counsel.

Date: 3/10/26

ROSHAN SHAH
Defendant

I am the defendant's attorney. I carefully have reviewed every part of this agreement with the defendant. To my knowledge, my client's decision to enter into this agreement is an informed and voluntary one.

Date: 3/10/20

ALEXANDRA DOUGLAS
Attorney for Defendant

For the United States of America:

Date: 3/11/2026

BRAD D. SCHIMEL
United States Attorney

Date: 3/11/2026

PETER J. SMYCZEK
ZACHARY COREY
Assistant United States Attorneys

16